William FLOWERS, Petitioner–Appellee,

v.

**WARDEN, CONNECTICUT CORRECTIONAL INSTITUTION, SOMERS,** Respondent–Appellant.

**No. 1152, Docket 88–2110.**

United States Court of Appeals, Second Circuit.

Argued May 24, 1988.

Decided Aug. 4, 1988.

---

Steven M. Sellers, Asst. State's Atty., Wallingford, Conn., for respondent-appellant.

Gary D. Weinberger, Asst. Federal Public Defender (Thomas G. Dennis, Federal Public Defender, of Counsel), Hartford, Conn., for petitioner-appellee.

Before NEWMAN and PRATT, Circuit Judges, and MICHAEL A. TELESCA, District Judge of the Western District of New York, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

On May 9, 1981, William Flowers was arrested by Florida authorities on a Connecticut warrant charging him with murder. Flowers waived extradition and was returned to Connecticut on June 1, 1981, where, unable to post $250,000 bail, he remained incarcerated pending trial. Over 17 months later, Flowers was finally brought to trial in Connecticut state court. During that time he had made numerous assertions of his right to a speedy trial.

Neither party disputes that the sole reason for this delay was docket congestion, a problem compounded by a state policy of setting criminal cases for trial based on strict chronological order, and without regard to whether a defendant is incarcerated or free on bail. Because Flowers could show neither prejudice to his defense nor bad faith on the part of the government, the state court denied petitioner's motion to dismiss the murder charge based on a violation of petitioner's speedy-trial right, and a jury subsequently convicted Flowers of murder.

Flowers timely appealed, but the Connecticut Supreme Court affirmed. In addition to his other arguments, Flowers claimed that he had been denied his sixth amendment right to a speedy trial, and asked, as a result, that the court overturn his murder conviction. The state supreme court refused, and affirmed the lower court judgment that there had been no violation of Flowers's constitutional right to a speedy trial. *State v. Flowers*, 198 Conn. 542, 503 A.2d 1172 (1986).

Flowers then sought a writ of habeas corpus in the federal district court which after a hearing specifically found (1) that court congestion was solely responsible for the 17-month delay, (2) that Flowers had continually asserted his right to a speedy trial, and (3) that although Flowers suffered no actual prejudice to his case, his incarceration, coupled with prolonged anxiety and concern, was sufficient to constitute "prejudice". The district court directed that Flowers's conviction be vacated and the indictment be dismissed, 677 F.Supp. 1275.

Connecticut appeals.

## DISCUSSION

The four *Barker* factors guide our evaluation of an alleged denial of the constitutional right to a speedy trial: the length of the delay, the reasons for the delay, the defendant's assertion of his right, and the extent of prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *United States v. McGrath*, 622 F.2d 36, 40 (2d Cir.1980). As the Supreme Court has recognized, these factors have no "talismanic qualities", and none is "either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193. Rather, they are "related

factors" that "must be considered together with such other circumstances as may be relevant." *Id.*

As to the first factor, length of the delay, we note first that the 17–month delay here, while lengthy, is nevertheless considerably shorter than those in other cases where we have found no speedy trial violation. *United States v. McGrath,* 622 F.2d 36 (2d Cir.1980) (24 months); *United States v. Lane,* 561 F.2d 1075 (2d Cir.1977) (58 months); *United States v. Cyphers,* 556 F.2d 630 (2d Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977) (33 months); *United States v. Mejias,* 552 F.2d 435 (2d Cir.), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977) (21 months); *United States v. McQuillan,* 525 F.2d 813 (2d Cir.1975) (26 months); *United States v. Lasker,* 481 F.2d 229 (2d Cir. 1973), *cert. denied,* 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871 (1974) (2 years); *United States v. Infanti,* 474 F.2d 522 (2d Cir. 1973) (28 months); *United States v. Fasanaro,* 471 F.2d 717 (2d Cir.1973) (over 4 years); *United States v. Saglimbene,* 471 F.2d 16 (2d Cir.), *cert. denied,* 411 U.S. 966, 96 S.Ct. 2146, 36 L.Ed.2d 686 (1973) (6 years); *United States v. Schwartz,* 464 F.2d 499 (2d Cir.), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972) (4½ years); *see also Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (5 years).

Although it may be true that, under *Barker's* third factor, Flowers asserted his right to a speedy trial more forcefully than did some of the defendants in the above cases, *but cf. Infanti,* 474 F.2d at 528 (no violation of right to speedy trial even though defendant asserted his right within 1½ months after indictment), it is also true that, under *Barker's* fourth factor, some of those defendants suffered substantially more prejudice than did Flowers. *See, e.g., Cyphers,* 556 F.2d at 636 (no constitutional speedy-trial violation even though defendant's incarceration while awaiting trial in New York prevented a timely consideration of his parole in Ohio and prohibited him from receiving a federal sentence concurrent with his Ohio sentence); *McQuillan,* 525 F.2d at 818 (no speedy-trial violation

even though delay cost defendant his job, and some of his witnesses became unavailable); *Lasker,* 481 F.2d at 237 (prejudice was "insubstantial" even though defendant suffered damage to his reputation, witnesses' memories dulled, and two character witnesses for defendant died); *Infanti,* 474 F.2d at 528 (no violation of defendant's right to a speedy trial even though defendant alleged that two witnesses critical to his case had died, prosecution witnesses' memories had lapsed, and records allegedly critical to defendant's case had been destroyed); *Saglimbene,* 471 F.2d at 18 (no violation of speedy-trial right even though defendants suffered "adverse psychological effect[s]"); *Fasanaro,* 471 F.2d at 718 (no violation of speedy-trial right even though defendant contended that a defense witness had died during the delay); *Schwartz,* 464 F.2d at 505 (no violation of speedy-trial right even though defendant claimed destruction of records, impairment of witnesses' memory, and unavailability of a government official who could testify that defendant's transaction was legal); *cf. Barker,* 407 U.S. at 534 (no violation of speedy-trial right even though defendant spent "ten months in jail before trial" and "was prejudiced to some extent by living for over four years under a cloud of suspicion and anxiety").

■ In addition, the prejudice that defendant has suffered here does not approach the prejudice suffered by defendants in cases where we have found a speedy-trial violation. *See United States v. New Buffalo Amusement Corp.,* 600 F.2d 368, 379 (2d Cir.1979) (witnesses crucial to defense could no longer be located, and other witnesses who previously had agreed to testify refused to do so); *United States v. Vispi,* 545 F.2d 328, 334–35 (2d Cir.1976) (delay made locating old records and dealing with dimmed recollections "a formidable task"); *United States v. Roberts,* 515 F.2d 642, 646 (2d Cir.1975) (government's delay disqualified defendant for youthful offender status). Of course, the defendant has undergone significant hardship from 17 months of pretrial incarceration. Though this circumstance is

properly included in the assessment of "prejudice" under *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, it is not sufficient to establish a constitutional violation under all of the facts of this case.

Finally, Flowers admits that under *Barker's* second factor—the reason for the delay—Connecticut's delay in bringing him to trial was not due to "deliberate procrastination" or "negligent inaction", *see Lane*, 561 F.2d at 1079; nor does he suggest that it was due to any attempt to obtain a tactical advantage. *See Roberts*, 515 F.2d at 646–47. The delay, instead, was due solely to "institutional dysfunction". *McGrath*, 622 F.2d at 41; *cf. United States v. Avalos*, 541 F.2d 1100, 1111–12 (5th Cir. 1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977) (no violation of speedy-trial right even though prosecution deliberately caused part of 15–month delay).

Considering these "related factors * * * together with other circumstances as may be relevant", *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193, and measuring them against our rulings in past cases, we hold that Connecticut did not violate Flowers's constitutional right to a speedy trial. Although Connecticut's 17–month delay resulted from a rigid and troubling adherence to a lock-step, chronological approach to case management, there was nevertheless no bad faith, negligence, or tactical maneuvering by the state, and Flowers suffered no prejudice to his defense. Accordingly, the delay did not violate petitioner's sixth amendment right to a speedy trial.

Despite this, we express our deep concern with any lock-step system which forces an incarcerated defendant to wait 17 months for trial. Although we recognize that Connecticut has taken positive steps, both during and subsequent to Flowers's pre-trial incarceration, to eliminate potential speedy-trial violations—including passing a speedy-trial act, extending the hours of operation for criminal courts hearing jury matters, and reassigning criminal cases, where possible, to less congested courts in outlying geographic regions—we nevertheless point out that a case with a delay similar to the one here, but with a showing of greater prejudice to the defendant or of some bad faith by the prosecution, might well merit dismissal on speedy-trial grounds. *See, e.g., Roberts*, 515 F.2d at 646–47; *McCarthy v. Manson*, 554 F.Supp. 1275, 1297–98 (D.Conn.1982), *aff'd on other grounds*, 714 F.2d 234 (2d Cir. 1983). This, however, is not such a case.

The district court's judgment is therefore reversed, and the petition is dismissed.