**UNITED STATES of America, Appellee,**

v.

**Manuel VASQUEZ and Jose Pollo Renteria, Defendants–Appellants.**

**Nos. 4, 89, Docket 89–1561, 89–1564.**

United States Court of Appeals, Second Circuit.

Argued Aug. 28, 1990.

Decided Nov. 2, 1990.

Bettina Schein (John H. Jacobs, New York City, of counsel), for defendant-appellant Renteria.

Ian Lowell Heller (Thomas C. Monaghan, Broad Channel, N.Y., of counsel), for defendant-appellant Vasquez.

Adria DeLandri, Asst. U.S. Atty. for the S.D.N.Y. (Otto G. Obermaier, U.S. Atty. for the S.D. of N.Y., Andrea M. Likwornik, Daniel C. Richman, Asst. U.S. Attys., New York City, of counsel), for appellee.

* Honorable José A. Cabranes, United States District Judge for the District of Connecticut, sitting by designation.

Before FEINBERG and CARDAMONE, Circuit Judges, CABRANES, District Judge.*

FEINBERG, Circuit Judge:

Manuel Vasquez and Jose Pollo Renteria appeal from judgments of conviction in the United States District Court for the Southern District of New York, after a jury trial before Judge Mary Johnson Lowe. Appellants were convicted on two counts charging them with conspiring to distribute and to possess more than five kilograms of cocaine, in violation of 21 U.S.C. § 846, and with possession of more than five kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). Judge Lowe sentenced each defendant to a 10–year term of imprisonment, to be followed by a five-year period of supervised release. Appellants claim that the length of time (nearly 26 months) that elapsed between the commencement of proceedings against them and the start of trial violated their statutory and constitutional rights to a speedy trial. Vasquez also claims that his conviction was flawed because evidence at a pretrial competency hearing proved that he was unable meaningfully to assist in his own defense. For reasons given below, we affirm.

## I. Background

The government's evidence at trial amply established that Vasquez and Renteria committed the crimes with which they were charged. They were arrested while attempting to complete a sale in Vasquez's apartment of approximately five kilograms of cocaine to a government undercover agent. In the course of the arrest, government agents uncovered six kilograms of cocaine, $1,400 dollars in cash on Vasquez's person, $2,382 in cash in the apartment and a loaded handgun. The testimony of government agents and the introduction of the physical evidence amply proved defendants' guilt at trial.

The chronology leading up to appellants' speedy trial claims is as follows: The government indicted defendants on June 11, 1987, two weeks after their arrest and detainment. They were arraigned on June 18, 1987, and the case was thereafter assigned to Judge Lowe. On June 25, 1987, at the first pretrial conference, the government indicated that it was ready to go to trial at any time. Counsel for Renteria requested, on behalf of both defendants, that the court schedule another conference for July 1, 1987, and exclude the period from June 18 until July 1 from speedy trial calculations in the interest of justice. Pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 et seq., the judge granted this motion.

At pretrial conferences on July 1 and July 7, 1987, the court granted further exclusions of time under the Act until July 23 in order to allow defense counsel time to obtain and review discovery materials produced by the government. At the July 23 conference, counsel for Renteria, speaking as well for Vasquez, requested time to consider the discovery materials and to decide whether any motions were necessary. At defense counsel's suggestion, the court scheduled an August 18, 1987, conference, and excluded the intervening period from the speedy trial clock.

At the August 18 conference, Renteria's counsel stated that he had no motions, but would join any motions made by Vasquez that were applicable to Renteria. Renteria's counsel also explained that, because he was engaged in a lengthy trial in *United States v. Salerno*[1] (then in progress also before Judge Lowe) and Renteria did not wish to retain new counsel, Renteria agreed to waive any speedy trial rights until the conclusion of the Salerno trial. Vasquez immediately joined in Renteria's speedy trial waiver, and filed a motion to suppress both the currency recovered from him personally and the cocaine seized at the time of his arrest. Judge Lowe gave the government time to respond to Vasquez's motion, and scheduled a conference for late September, with the intervening period excluded from speedy trial calculations.

At the conference on September 30, 1987, counsel for Vasquez withdrew his motion to suppress the seized cocaine, leaving outstanding his motion to suppress the currency. He then asked the court to order a psychiatric examination of Vasquez to determine his competency to stand trial. The court granted the request, ordered that a report be prepared by November 16, 1987, and excluded the time needed for the examination.

The government promptly submitted an order to the court directing a psychiatric examination of Vasquez. That order was signed on October 7, 1987 and filed the following day. However, there is no record that the United States Marshals' Service, which was responsible for transporting the defendant to a psychiatric facility, received the order. Approximately four months passed before the government was apprised of this fact; it submitted a second order to the district court, which was signed on February 11 and filed on February 17, 1988. Vasquez, however, did not actually reach the Federal Correctional Facility at Butner, North Carolina to begin his examination until June 18, 1988. In early July 1988, the district judge granted the warden of the Butner Correctional Facility more time to conclude the psychiatric examination. On August 3, 1988, the court received the warden's report finding that Vasquez was competent to stand trial.

While Vasquez was undergoing examination at the Butner facility, the *Salerno* trial had ended on May 12, 1988; this meant that Renteria's counsel became available to prepare for trial in this case. Judge Lowe held a conference on September 30, 1988, at which point counsel for Vasquez informed her that he wished to controvert the warden's report. The court allowed Vasquez's attorney time to prepare his challenge to the report, and scheduled a

1. See *United States v. Ianniello,* 740 F.Supp. 171 (S.D.N.Y.1990), which recounts the outcome of the *Salerno* trial before Judge Lowe and addresses defendants' post-conviction challenge to the jury's verdict.

competency hearing for November 28, 1988, with the intervening time to be excluded. At the September 30 conference, Renteria's counsel noted that although he was now ready to proceed to trial, he recognized that co-defendant Vasquez still had outstanding motions and that the speedy trial clock would not run while this was the case.

On November 28, 1988, counsel for Vasquez informed the Court that he had not yet received the report from the psychologist he had retained, and he asked for additional time. The court scheduled a conference for December 22, 1988, with the intervening time excluded from the speedy trial clock. On November 30, Dr. Larry A. Cohen, the psychologist retained by Vasquez, submitted his report, concluding that Vasquez was unfit to proceed to trial. The court then directed Vasquez to submit to an examination by Dr. Naomi Goldstein, a psychiatrist selected by the government. On January 10, 1989, Dr. Goldstein submitted her report concluding that Vasquez was fit to proceed, and the court scheduled a competency hearing for early April 1989. That hearing was adjourned when Judge Lowe became ill.

On April 10, 1989, Renteria moved to dismiss the indictment, claiming a violation of the Speedy Trial Act, and alternatively sought a severance. Vasquez joined in the speedy trial motion on April 19, 1989. The motion was fully submitted on June 16, 1989, when the government informed the court, in response to its request, of the results of the government's inquiry into why Vasquez's examination at Butner had not been conducted sooner.

In a Memorandum Opinion and Order dated July 13, 1989, Judge Lowe denied defendants' motions to dismiss. With respect to Vasquez, the court held that the time that had elapsed since September 30, 1987, during which Vasquez was examined at his request and his mental competency contested in motions, must be automatically excluded from Speedy Trial Act calculations pursuant to 18 U.S.C. §§ 3161(h)(1)(A) and (F). In addition, the district court determined that motion practice by Vasquez also stopped the clock as to Renteria, because under § 3161(h)(7) exclusion of time as to one defendant stops the speedy trial clock as to co-defendants. While observing that this provision covering co-defendants requires that any delay be "reasonable," the court noted that Renteria's attorney had been unavailable until the end of the Salerno trial on May 12, 1988. Furthermore, the court found that Renteria could not rely on the reasonableness requirement of § 3161(h)(7), because he had never sought a severance until his motion in April 1989. The court also rejected defendants' constitutional claims to a speedy trial. Finally, Judge Lowe denied Renteria's severance motion.

On July 31, 1989, the district court held a final pre-trial conference to schedule hearings on Vasquez's competency and his suppression motion regarding the currency. Vasquez's counsel suggested that the competency hearing be set for the second week of September, but the court put both hearings on for August 7, with trial to begin on August 8. On August 7, after a jury was selected and sworn, the court began the competency hearing, which continued into the following day. After the court found Vasquez competent, trial testimony began on August 8 and the trial ended on August 10, when the jury found each defendant guilty on both counts. These appeals followed.

## II. Discussion

Appellants' claims focus on the protracted pretrial proceedings that extended over a period of two years. Appellants' statutory rights in this connection are defined under the Speedy Trial Act. The Act provides that a defendant must be tried within 70 days of either the filing of an indictment against him or his first appearance on the charge before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1). The Act also "provides for the exclusion of certain periods from computation of the seventy day limit." *United States v. Pena,* 793 F.2d 486, 488 (2d Cir.1986); see § 3161(h)(1)(9). The key question before us is whether the extensive pre-trial delay

here falls within the excluded time provisions of the Act.

## A. *Vasquez's Statutory Speedy Trial Claims*

■ Vasquez argues that the unreasonable delays associated with the completion of the examination of his mental competency violated the 70–day provision of the Act. The principal delay in question is the approximately 10–month period from September 30, 1987, when counsel for Vasquez first applied for a psychiatric examination to determine Vasquez's competency to stand trial, to August 3, 1988, when the court finally received the government's report from the Butner correctional facility evaluating Vasquez's competency. There was also another period of delay from August 3, 1988 to April 19, 1989, when Vasquez made his speedy trial motion, and from April 19 to August 8, 1989, when the Court finally found Vasquez competent and proceeded to trial.

It is clear that there was serious institutional error in this case. The district judge ordered an examination of Vasquez on October 7, 1987, but Vasquez did not actually arrive at the facility where the examination would take place until over eight months later. We note that subsection 3161(h)(1)(H) specifies with regard to transportation for the purpose of examination that "any time consumed in excess of ten days from the date of an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." Nonetheless, even if we assume that administrative mistakes in this case led to an "unreasonable" delay, that delay would not necessarily have constituted a violation of Vasquez's rights under the Speedy Trial Act. The government maintains that the plain meaning of subsections (h)(1)(A) and (h)(1)(F) of § 3161 of the Act, reproduced in the margin,[2] is that delays arising from mental competency examinations and pretrial motions are excluded from the running of the speedy trial clock, without any inquiry into the reasonableness of the delay.

■ In *Henderson v. United States*, 476 U.S. 321, 330, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299 (1986), the Supreme Court held that subsection (h)(1)(F) provides for exclusion of "all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'" The opinion in *Henderson* disapproved of a 1982 ruling of this court (*United States v. Cobb*, 697 F.2d 38 [2nd Cir. 1982]) that did allow an inquiry into the reasonableness of the delay. After the Court's decision in *Henderson*, we read its rationale requiring an automatic exclusion to apply as well to subsection (h)(1)(A) concerning competency proceedings of defendant. *United States v. Matsushita*, 794 F.2d 46, 51 (2d Cir.1986).

Since the delays here complained of by Vasquez arose from proceedings to determine his competency and were prior to the conclusion of the hearing thereon, they must be excluded from the calculation of the speedy trial clock whether or not they are reasonable. This applies both to delays prior to delivery of the mental competency report by the warden of Butner on August 3, 1988, and to the pretrial proceedings that extended for a year thereafter. The delays affecting Vasquez that occurred after the delivery of the Butner report on August 3, 1988 concern periods of time resulting from proceedings to determine his mental competency or from pretrial motions whose ultimate disposition extended up until August 8, 1989. Consequently, these delays are properly excludable under subsections (h)(1)(A) and (h)(1)(F).

■ Vasquez concedes that the government is correct in relying on *Henderson* to generally justify automatic exclusions of

---

**2.** 18 U.S.C. § 3161(h)(1)(A) excludes:
    delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant.

Subsection (h)(1)(F) excludes:
    delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.

time, regardless of reasonableness. Notwithstanding that concession, Vasquez claims that applying the rule to him on the facts of this case would violate the Equal Protection Clause. He first points out that under subsection 3161(h)(7), courts must inquire, at the request of a defendant, into the reasonableness of any delay caused by proceedings as to a co-defendant. That subsection excludes:

[a] *reasonable* period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted (emphasis supplied).

Thus, Vasquez argues, in this case the government could exclude as against Renteria only a reasonable delay caused by proceedings involving co-defendant Vasquez, but could not exclude any unreasonable delay so caused. Vasquez claims, however, that he is entitled to the same protection against unreasonable delay under the Act as is accorded a similarly situated co-defendant. Therefore, applying subsection (h)(1)(A) to Vasquez without reading a reasonableness requirement into the statutorily authorized delay may be a faithful interpretation of the wording of the statute but must be rejected as unconstitutional.

Vasquez's equal protection argument is without merit. Since defendants under the statute are not members of a suspect class, the difference in treatment between them and co-defendants is constitutionally permissible as long as it stands on some rational basis. For example, a defendant who challenges his competency to stand trial is much more directly involved in the resulting court proceedings than his co-defendant who may be sitting idly by. It seems sensible to require a greater level of justification for exclusion of a period of delay from the speedy trial clock when the delay affects the co-defendant on the sidelines rather than when it affects the defendant whose competency is at issue. It follows, then, that the reading of subsection (h)(1)(A) endorsed in *Henderson* may constitutionally apply to Vasquez to exclude even unreasonable delays arising from the competency proceedings that affect him. While there may be limits to tolerating delays in these circumstances, Vasquez's argument fails to establish that these limits are statutory rather than constitutional.

### B. *Renteria's Statutory Speedy Trial Claim*

Renteria, however, presents a stronger claim under the Act because he is the co-defendant in the situation described above and receives greater protection under the Act. Renteria argues that his rights were violated by the unreasonable delays in proceedings concerning co-defendant Vasquez, delays that extended over 22 months in order to decide various pretrial motions. Renteria claims that subsection (h)(7) excludes only "reasonable" delays, that the delays caused by the competency proceedings concerning co-defendant Vasquez were not reasonable and that the time was therefore not excludable in calculating Renteria's speedy trial clock. This claim seems particularly persuasive in view of the government's lengthy delays in delivering co-defendant Vasquez to the facility at Butner for a competency examination.

The government's reply is that Renteria's failure to move for a severance prior to April 10, 1989, precludes him from invoking the reasonableness requirement of subsection (h)(7) as to delays occurring prior to that date. This was the view adopted by Judge Lowe in her July 13, 1989 Memorandum Opinion and Order on Renteria's speedy trial motion. On this view, all delays relating to Vasquez's competency proceedings that occurred prior to April 10, 1989 are automatically excludable for Renteria as well, regardless of whether or not they were reasonable. Since the period subsequent to April 10, 1989 is excludable for Renteria because it either involved the consideration of his own pending speedy trial motion covered under subsection (h)(1)(F) and subsection (h)(1)(J), reproduced in the margin,[3] or the continuing competen-

---

**3.** 18 U.S.C. § 3161(h)(1)(J) excludes:
delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

cy proceedings of co-defendant Vasquez covered under subsection (h)(7), Renteria's speedy trial claim cannot prevail if the government's interpretation of subsection (h)(7) is correct.

The crucial issue, then, is whether subsection (h)(7) requires a defendant to move for severance before he can invoke the reasonableness requirement as to delays occasioned by his joinder with a co-defendant. At first glance this reading does not appear to comport with the actual wording of the statute quoted above, which states only that a "reasonable period of delay" shall be excluded "when the defendant is joined ... with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). A more natural reading would suggest that two conditions have to be met in order to justify exclusion of only a "reasonable period of delay" from the running of a defendant's clock: (1) the defendant must be joined with a co-defendant for whom time has still not run; and (2) a motion to sever the defendant from trial with the co-defendant must not have been granted. The second condition appears merely to impose a further limitation on the right of the government to have delays that are reasonable excluded from a defendant's clock; it suggests that such delays are excludable when defendants are joined, but should not be excluded after the point at which a motion to sever has actually been granted. The subsection does not obviously suggest, however, that until a defendant moves for severance (and loses), the government has the right to have excluded from the running of defendant's time clock not only reasonable but also *unreasonable* delays.

The government concedes that the language of subsection (h)(7) is somewhat ambiguous on this matter, but insists that a review of the applicable legislative history, as was done in *United States v. Payden,* 620 F.Supp. 1426 (S.D.N.Y.1985), confirms its interpretation. In *Payden* the district court reviewed earlier versions of the word-

ing of subsection (h)(7) and reached the following conclusion:

> The language "no motion for severance has been granted" replaced language in the bill introduced by Representative Mikva in 1971. The Mikva Bill stated:
>
> > A reasonable period of delay [is excludable] when the defendant is joined for trial with a codefendant as to whom time for trial has not run and *there is good cause for not granting a severance. In all other cases, the defendant shall be granted a severance so that he may be tried within the time limits applicable to him.*
>
> H.R. 7107, 92d Cong., 1st Sess. (1971) (emphasis added). Under this version of the statute, a motion for severance clearly was contemplated. The original language was changed in a later draft of the statute introduced by Senator Ervin, S. 754, 93d Cong., 1st Sess. (1973), to include the language that appears in the present statute. This change in language was intended to ensure that the burden of proof regarding severance, which had always been on the defendant, was not shifted to the government by the statute. The original language was thought to have shifted the burden of proof from the defendant to the government.... Thus, the original language of the statute together with the reasons for its change indicate that the requirement for a severance motion survived the change in language.

Id. at 1428.

The government's appeal to legislative history is not altogether persuasive. The original language of the statute certainly did raise a problem concerning a shift in the burden of proof from a defendant to the government on a motion for severance. However, it is arguable that the revision of the statutory language was designed merely to deal with this problem rather than to require a defendant to make a motion for severance (that is denied) in order to re-

ceive the protection of the reasonableness limitation on delays affecting co-defendants. See *United States v. Novak*, 715 F.2d 810, 814 (3d Cir.1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984).

Indeed, it is also conceivable that the concern about shifting the burden of proof was related only to the possibility that the government would be prevented from having even reasonable delays excluded by failing to demonstrate that there was good cause for not granting a severance. Shifting the severance burden of proof to the government might enable a defendant to challenge the exclusion of even reasonable delays by claiming that, notwithstanding his own inaction in seeking a severance, there was not good cause for not granting a severance and therefore even reasonable periods of delay should not be excluded under the statute.

On the other hand, it is also clear that the defendant had the responsibility to move for a severance under the earlier version of the bill and that, as the *Payden* court pointed out, this "requirement ... survived the change in language." Congress thus never envisioned requiring the government to move for severance sua sponte in order to avoid the possibility that unreasonable delays in proceedings involving a co-defendant would be credited to the running of the time clock of a joined defendant.

It is not clear what the weight of authority is on the question whether a defendant must make a motion for severance in order to benefit from the reasonableness requirement of subsection (h)(7). In *United States v. Mitchell*, 723 F.2d 1040 (1st Cir. 1983), the First Circuit explicitly stated that the defendant's failure to make a motion for severance "amounted to a waiver of any claim that the (h)(7) exclusion was not properly applied." 723 F.2d at 1048. Other courts have not directly addressed the issue, but have noted that the defendant making a speedy trial motion had also not sought severance and have imputed all of the co-defendant's time to the complaining defendant. See *United States v. Sar-*

*ro*, 742 F.2d 1286, 1299 (11th Cir.1984). On the other hand, at least two circuits have recognized a reasonableness limitation on the application of excludable time from one co-defendant to another without noting whether or not a motion for severance had been made and denied. See *United States v. Darby*, 744 F.2d 1508, 1516–19 (11th Cir.1984), cert. denied, 471 U.S. 1100, 105 S.Ct. 2322, 85 L.Ed.2d 841 (1985); *United States v. Novak*, 715 F.2d at 814–15.

Given the absence of unanimity among courts on this question and the lack of clear direction in either the statutory language or legislative history, we believe that the government's construction of subsection (h)(7) is preferable. To be sure, it is generally the case under the Speedy Trial Act that the government's affirmative obligation to insure the speedy prosecution of criminal charges is not relieved when a defendant does not take positive steps to insure that he will be tried in a timely manner. *United States v. Tunnessen*, 763 F.2d 74, 79 (2d Cir.1985); *United States v. Bufalino*, 683 F.2d 639, 646 (2d Cir.1982), cert. denied, 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983). Nonetheless, requiring a defendant to make a motion for severance in order to benefit from the reasonableness limitation of subsection (h)(7) is justified in light of the specific purpose of "the (h)(7) exclusion" within the overall context of the Speedy Trial Act, which is "to make sure that [the Act] does not alter the present rules on severance of codefendants by forcing the Government to prosecute the first defendant separately or to be subject to a speedy trial dismissal motion under Section 3162." S.Rep. No. 93–1021, 93d Cong. 2d Sess. 38 (1974). See *United States v. Khoury*, 901 F.2d 948, 972, modified on other grounds, 910 F.2d 713 (11th Cir.1990); *United States v. Tobin*, 840 F.2d 867, 869 (11th Cir.1988); *United States v. Campbell*, 706 F.2d 1138, 1142 (11th Cir. 1983).

This interpretation of subsection (h)(7) also harmonizes well with "the congressional intent of avoiding waste of resources on unnecessary severances and separate trials," *United States v. Rush*, 738 F.2d 497, 503 (1st Cir.1984), cert. denied, 470

U.S. 1004, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985), especially "where the criterion [in favor of severance] was simply the passage of time," *United States v. Varella,* 692 F.2d 1352, 1359 (11th Cir.1982), cert. denied, 463 U.S. 1210, 103 S.Ct. 3542, 77 L.Ed.2d 1392, cert. denied, 464 U.S. 838, 104 S.Ct. 127, 78 L.Ed.2d 124 (1983). It imposes a unitary time clock on all co-defendants joined for trial, as is suggested in *United States v. Pena,* 793 F.2d 486, 489–90 (2d Cir.1986). The government's reading of subsection (h)(7) subjects the running of the unitary time clock to only one limitation: If a defendant makes a motion for severance that is denied, he is then entitled to the benefit of the reasonableness limitation on delays affecting co-defendants.

The severance requirement serves both to alert the trial court to defendant's claim of speedy trial prejudice and to remove the possibility that a defendant might acquiesce in unreasonable pretrial delays of a co-defendant and then belatedly seek the "reasonableness" protection of subsection (h)(7) in order to obtain dismissal of the indictment. It is clear in the present case that Renteria engaged in conduct of this very sort. Eliminating such a possibility promotes the general purposes of the Speedy Trial Act, which was not meant to be applied so as to "give gamesmanship priority over the practicalities of trial management." *United States v. Rush,* 738 F.2d at 505.

We therefore conclude that Renteria is not entitled to the benefit of the reasonableness requirement of (h)(7) prior to April 10, 1989, when he moved for a severance. Thus, any delays occurring prior to that date that are excludable as to Vasquez are also excludable as to Renteria. As already established in section II A of this opinion, the delays occurring prior to April 10, 1989 are fully excludable as to Vasquez. For this reason, Renteria's speedy trial claim with respect to this period of delay also must fail.

▮ Even if we did not endorse the government's reading of subsection (h)(7), there are independent grounds on the record before us sufficient to hold that, as against Renteria, the delay prior to his severance motion was not unreasonable. Renteria not only waited almost 22 months before alleging a violation of his speedy trial rights or alternatively seeking a severance, but he also affirmatively indicated during much of this period that he was willing to countenance extensive pretrial delays. Early in the pretrial proceedings, at the August 18, 1987 pretrial conference, Renteria agreed to join any motions made by Vasquez that were applicable to Renteria and to waive any speedy trial rights until the conclusion of the Salerno trial, which finally ended on May 12, 1988. Nearly five months later, at the September 30, 1988 conference, Renteria's counsel, aware of the continuing delays in Vasquez's mental competency proceedings, still conceded that the speedy trial clock would not run as to Renteria while Vasquez's motions were outstanding. Having made a clear tactical choice not to file a severance motion or contest the delays affecting his co-defendant until April 10, 1989, Renteria should not be permitted to demand a retrospective inquiry into the reasonableness of delays preceding his belated motion. Indeed, it is plausible to regard Renteria's active participation and acquiescence in such delays as itself a significant indication of their reasonableness. See *United States v. Dennis,* 737 F.2d 617, 621 (7th Cir.), cert. denied, 469 U.S. 868, 105 S.Ct. 215, 83 L.Ed.2d 145 (1984), holding that defendant's failure to move for severance is a factor in determining whether delay was reasonable under (h)(7).

### C. *Appellants' Sixth Amendment Claims*

▮ In addition to their statutory claims under the Speedy Trial Act, both Vasquez and Renteria also argue that the delay between their arrest and trial violated their rights under the Speedy Trial Clause of the Sixth Amendment.

▮ Under *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the four factors to be considered in determining whether there has been a depriva-

tion of defendant's constitutional right to a speedy trial are: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right; and (4) the prejudice to the defendant. *Id.* at 530–33, 92 S.Ct. at 2191–93. The length of the delay here was less extensive than that tolerated in other cases. See, e.g., *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir.1980), holding that delay of 24 months is "considerably shorter than that of other cases in which no Sixth Amendment violation has been found." As to the reason for the delay, most of the 26 months at issue was consumed by consideration of defendants' various pretrial motions, and even the apparently negligent delay caused by the government's failure promptly to carry out Vasquez's competency examination at the Butner facility was a result of "institutional dysfunction" rather than deliberate wrongdoing or bad faith. See *id.*

The third factor of the *Barker* test, defendant's assertion of speedy trial rights, weighs heavily against appellants. As noted above, both defendants waited roughly 22 months before advancing their speedy trial claims, and this hardly renders plausible their contention that an expeditious resolution of their cases was a matter of pressing constitutional importance for them. As the Court noted in *Barker*, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 532, 92 S.Ct. at 2193. See also *Rayborn v. Scully*, 858 F.2d 84, 92 (2d Cir.1988), cert. denied, 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989). Finally, the fourth factor does not strengthen appellants' argument enough to carry the day. Of course, incarceration in the pretrial period was a hardship and must be included in the assessment of "prejudice." But, the circumstances here do not "approach the prejudice suffered by defendants in cases where we have found a speedy-trial violation." See *Flowers v. Warden*, 853 F.2d 131, 133 (2d Cir.), cert. denied, 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988).

Our application of the *Barker* test thus indicates that while three factors—length of delay, reason for delay and prejudice—

do not decisively confirm appellants' allegations of a constitutional violation, the fourth factor—a defendant's assertion of his right—weighs heavily against their claim. After reviewing all of the relevant factors, we conclude that appellants did not suffer a violation of their constitutional right to a speedy trial.

### D. *Vasquez's Competency Claim*

Vasquez argues that the evidence at his competency hearing was sufficient to prove that he was unable to assist meaningfully in his own defense and that accordingly the trial should have been adjourned until he was competent to proceed. He insists that the district court abused its discretion in finding him competent. Since the district court's determination was based upon credible evidence supplied by a forensic team at Butner Correctional Facility and by an experienced forensic psychiatrist whose credentials were unchallenged by Vasquez, we find this claim insupportable.

The judgments of conviction are affirmed.