UNITED STATES of America

v.

Rafael CRUZ, a/k/a "Esa," Defendant.

No. S11 94 Cr. 313 (CSH).

United States District Court,
S.D. New York.

Dec. 4, 1995.

Jerry M. Vasquez, New York City, for defendant.

Mary Jo White, United States Attorney, Southern District of New York, New York City (Jean Walsh, of counsel), for the U.S.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

In Counts One and Two of the two-count superseding indictment in this case, defendant Rafael Cruz is charged with conspiracy to distribute and to possess with the intent to distribute heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846, and with the use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 924(c) and 2. By Notice of Motion dated November 17, 1995, Cruz moved this Court to dismiss the instant indictment under the Speedy Trial Act, 18 U.S.C. § 3161, and the Fifth and Sixth Amendments to the United States Constitution on the ground that he has been denied his right to a speedy trial. I denied that motion in an oral ruling on November 27, 1995. This opinion sets forth the Court's reasons.

## FACTS

On September 30, 1994, defendant was charged as one of 19 defendants in a 78-count superseding indictment involving the C & C criminal organization. S1 94 Cr. 313. On October 3, 1994, Cruz was arraigned and pled not guilty.

On October 19, 1994, Cruz filed a motion seeking various forms of discovery relief, the dismissal of the two counts against him and, alternatively, severance from his codefendants. On October 26, 1994, this Court gave the government permission to extend its reply date until November 14, 1994. Prospective orders of exclusion of time were made under the Speedy Trial Act, 18 U.S.C. § 3161 et seq. (the "Act"), to accommodate these motions.

On December 8, 1994, the government agreed to sever Cruz's case from that of his codefendants. With Cruz's explicit consent, time under the Act was prospectively excluded from that date until the conclusion of the trial of Angel Padilla, the principal architect of the C & C organization. Transcript of December 8, 1994 Pre-Trial Conference ("Tr.") 6–11.

The jury in the *Padilla* trial reached a verdict on May 17, 1995. On that day this Court issued an order scheduling a status conference for Cruz on May 25, 1995 and excluding time until that conference. The defendant appeared with counsel, Manuel Zapata, Esq., at the May 25, 1995 conference. Counsel informed the Court that he planned to make a motion to supplement the one he had filed on October 19, 1994, which had not been decided. Time was therefore excluded from May 25 through June 23, 1995, the date on which the government's response to the motion was due. Cruz filed the supplemental motion on June 9, 1995; on June 22, 1995, Cruz consented to and the Court ordered an extension of time for the government's response until June 28, 1995. Meanwhile, on June 25, a trial was scheduled for Cruz for July 17, 1995. The government filed its response papers to both of Cruz's pending motions—dated October 19, 1994 and June 9, 1995—on June 30, 1995.

On July 10, 1995, the Court held a pretrial conference with Cruz and the government to address concerns raised by the government about a possible conflict of interest facing Cruz's trial counsel, Zapata. I reserved decision on the issue on that day, and prospectively excluded all time needed to decide the question. The issue was argued before the Court on July 28, 1995; decision was again reserved. On August 3, 1995, I issued a Memorandum Opinion and Order granting the government's application to disqualify

Zapata. By separate order on August 3, 1995, the Court excluded time through September 6, 1995, so that successor counsel could confer with defendant about the case.

On September 6, 1995, the Court ordered exclusion of time until September 8, due to defendant's inability to appear at a scheduled conference. On September 8, 1995, Cruz appeared before the Court for a status conference with new counsel, Jerry Vasquez, Esq. Successor counsel requested and was granted leave to file his own pretrial motions. At that conference the Court rescheduled defendant's trial for November 6, 1995, and prospectively excluded time until that date. In the interim period, Vasquez filed on Cruz's behalf a pretrial motion which, counsel advised the Court in a telephone conversation with chambers on October 17, 1995, was intended to supersede the still-undecided motions filed by original trial counsel, Zapata. I decided that motion on October 20, 1995. On October 30, a Grand Jury returned a superseding indictment against Cruz, including the same charges as were in the 78-count superseding indictment against the C & C organization.

On November 6, 1995, the day on which defendant's trial was scheduled to begin, defense counsel informed the Court that he would be unable to proceed on that date for medical reasons. The Court adjourned the trial to November 20, 1995, and prospectively excluded all time until then. Cruz made this application on November 17, 1995, alleging that the government and the Court have violated his right to a speedy trial by failing to respond to and decide his motions of October, 1994 and June, 1995 in a sufficiently timely manner.

### DISCUSSION

### 1. The Speedy Trial Act Claim

The Speedy Trial Act requires government prosecutors to bring a criminal defendant to trial within 70 days of either the defendant's first appearance before a judicial officer or the filing of the indictment, whichever occurs later. 18 U.S.C. § 3161(c)(1). Section 3161(h) identifies certain delays which shall be excluded from the time computed under this 70-day clock. Cruz asserts that the Speedy Trial Act was violated in his case because the government failed to respond to his motion of October 19, 1994 until June 30, 1995, and that this span of time was nonexcludable.[1] Cruz alleges that his waivers of the Speedy Trial Act were involuntary because he never agreed to the government's delay in responding to his motion.

Section 3161(h)(1)(F) of the Speedy Trial Act mandates exclusion of any period of delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." By contrast, § 3161(h)(1)(J) mandates a prospective exclusion of time for "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."

The Supreme Court has interpreted these subsections very differently. Section 3161(h)(1)(F) does not limit the amount of time that may be excluded, and the Supreme Court has ruled that "subsection (F) does not require that a period of delay be 'reasonable' to be excluded," nor that "only 'reasonably necessary' delays may be excluded between the time of filing of a motion and the conclusion of the hearing thereon." *Henderson v. United States,* 476 U.S. 321, 326–27, 330, 106 S.Ct. 1871, 1874–76, 1876, 90 L.Ed.2d 299 (1986). Rather, the Court held that subsection (F) excludes from the Speedy Trial Act clock "all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'" *Henderson,* 476 U.S. at 330, 106 S.Ct. at 1876. *See United States v. Anderson,* 902 F.2d 1105, 1109 (2d Cir.1990), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 146

---

1. "Whether the Government's delay in filing response papers to a defendant's motion can be excluded under the Speedy Trial Act is an open question in this circuit." *United States v. Adeniji,* 31 F.3d 58, 66 (2d Cir.1994). This Court need not resolve that open question at this time, however, because all delays in this case were excluded for valid reasons distinct from the government's non-response, as discussed below.

(1990) (applying *Henderson*'s reasonableness holding). By contrast, subsection (J) establishes a definite limit of thirty days of excludable delay once a trial court has a motion "under advisement." *Henderson*, 476 U.S. at 329, 106 S.Ct. at 1876. Subsection (F) applies to pretrial motions that require a hearing before they can be decided; subsection (J) applies to all other pretrial motions. *Id.*

■ I describe these subsections in detail because the government's reply brief relies heavily upon subsection (F) in its explanation of why the speedy trial clock has not run out in this case. This reliance is entirely misplaced. The government notes that Cruz's October, 1994 motion requested, *inter alia,* a pre-trial hearing on the issue of identification. From this fact the government draws the following conclusion: "when Cruz filed his motions on October 19, 1994, the speedy trial clock stopped running until those motions were decided, and there is no inquiry into the reasonableness of that delay." Government's Reply Letter Brief dated November 20, 1995 ("Reply Letter") at 4.

This conclusion misinterprets subsection (F). That subsection applies to a situation in which a court requires a hearing on a motion because it is unable to decide the motion on the papers alone. "The provisions of the Act are designed to exclude all time that is consumed in placing the trial court in a position to dispose of a motion." *Henderson* at 331, 106 S.Ct. at 1877. A motion requesting a pre-trial hearing on a disputed issue does not trigger subsection (F) unless another hearing—entirely separate from the requested hearing—is needed by a court before it can decide the motion. Subsection (F) would not have applied in this case, therefore, because Cruz's motion requesting a hearing could have been decided on the papers before the Court once the motion was under advisement. Cruz's motion, once answered by the government, would have fallen under subsection (J), and only 30 days of delay would have been excludable.

Defendant's Speedy Trial Act claim fails nonetheless, because the Court has consistently and explicitly excluded time in this case for other reasons, all of which meet the statute's requirements. This Court did not rely on the fact that Cruz's October, 1994 motion was pending as the basis for either a subsection (F) or a subsection (J) exclusion of time from the Speedy Trial Act clock. Rather, the Court made all the exclusions in this case on other grounds that are well within the language of 18 U.S.C. § 3161(h).

■ The speedy trial clock was stopped in Cruz's case almost immediately after he was arraigned by motions filed by his codefendants. 18 U.S.C. § 3161(h)(7) allows for the exclusion of "a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." *See United States v. Piteo,* 726 F.2d 50, 52 (2d Cir.1983), *cert. denied,* 466 U.S. 905, 104 S.Ct. 1682, 80 L.Ed.2d 156 (1984) (delay attributable to codefendant stops "single controlling clock"). Cruz's then-codefendant, Angel Padilla, filed a motion before the Court on October 4, 1994, stopping the speedy trial clock. Six of Cruz's codefendants followed suit, filing motions on October 12, 1994 and October 17, 1994. The government responded to most of those motions on November 14, and the Court decided them on December 5, 1994. Time was therefore properly excluded in this case from the day after Cruz's arraignment through December 5, 1994.

■ As noted above, on December 8, 1994, Cruz's motion for severance from his codefendants was granted. I took pains at that time to reassure myself that Cruz and the other severed defendants understood the consequences of the severance, as the following colloquy reflects:

THE COURT: What I need to say to you today is that, under a statute which we call the Speedy Trial Act, and which really is that—the name of the statute describes its function, its purpose—that statute sets down certain time limits within which a criminal trial must begin. And you could insist upon, each of you, your rights under the Speedy Trial Act and require that the government begin its case against you on January 9, just as it will begin its case on January 9 against the other defendants.

You have the right, each of you ... to refuse to have your case delayed but instead to have it begin on January 9, which is a date which conforms to and is obedient to the Speedy Trial Act. You have the absolute right to do that. But, if you prefer, then you may accept the advice and recommendation of your own attorneys and agree to a trial in your cases at a later date. If you agree to that, then I will make an order this morning excluding from the Speedy Trial Act calculations the time from and including today through the completion of the main trial, the date when you will be called for trial yourself.

So what I need to ask each of you today is whether you are willing to do that; whether you are willing to have your trial take place at a later time than the January 9 date which is set for the main trial; whether you are willing to give up the right which the Speedy Trial Act would give to you to be tried at the earlier date, January 9, and instead consent to a trial at a later time.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Mr. Cruz, how about you? Do you understand what I have said to you this morning about these questions?

DEFENDANT CRUZ: Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: And, Mr. Cruz, are you willing to have your case severed from the main trial and to be tried at a later time?

DEFENDANT CRUZ: Yes, sir.

Tr. at 7–11. Having ascertained that the defendant understood the consequences of severance, I made a prospective order of exclusion under the Speedy Trial Act from the date of that hearing through the conclusion of the main trial. The government was under no time-restricted obligation to answer Cruz's October 30, 1994 motion for the duration of that exclusion, because the speedy trial clock had been stopped for a different, and entirely valid, reason.

■ As detailed above, after the main trial ended on May 17, 1995, time was once again properly excluded in the Cruz case for a variety of reasons. First, on May 25, 1995, Cruz's then counsel, Zapata, requested the opportunity to make a supplemental motion based on the information newly available to him from the lengthy *Padilla* trial transcript. Time was excluded for the filing and resolution of this motion, which was filed on June 9, 1995. The government responded to both the June, 1995 and the October, 1994 motions on June 30, 1995. Only then, for the first time, were any of Cruz's motions under advisement before this Court, and I planned to decide the motions within the 30 days allowed by § 3161(h)(1)(J).

Only ten days later, however, the question of Zapata's disqualification was raised by the government, and time was again excluded for resolution of that question. Time under the Speedy Trial Act was then excluded for a variety of valid reasons from July 10, 1995 through November 20, 1995, as described in the factual section of this decision.

In his pending motion, Cruz argues that the government's failure to respond to his October, 1994 motion until June 30, 1995 violates the Speedy Trial Act because he never explicitly waived his right to a timely response to that motion. Memorandum of Law in Support of Defendant Rafael Cruz's Motion to Dismiss ("Cruz Mem.") at 5. Cruz's argument implies that although time was properly excluded from his speedy trial clock at the December 8, 1995 severance hearing, a clock was still running as to his October, 1994 motion, time on which subsequently ran out. The Court is thus asked to envision two Speedy Trial Act clocks running simultaneously, one with the 70–day limit and the exclusions related to that overall limit, and a separate motion clock with its own time lines and requirements.

■ I reject this interpretation because the Speedy Trial Act makes no such distinction. The sanctions provision of the Act requires dismissal of an indictment or information "if a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h)." 18 U.S.C. § 3162(a)(2). Therefore, if a trial judge relies upon any of the legitimate bases for the exclusion of time listed in § 3161(h), with the combined effect that fewer than 70 days of non-excluded time pass, then there

can be no violation of the Speedy Trial Act. There is no interim sanction for a delayed response to a motion during a period in which the speedy trial clock is validly stopped; here time was repeatedly excluded for a panoply of valid reasons, most notably motions by codefendants, a severance requested by defendant Cruz himself, and supplemental motions filed by Cruz.

Furthermore, the Second Circuit has recognized that a defendant's explicit waiver of speedy trial rights and consent to delay will undermine a defendant's allegations of unreasonable delay. In *United States v. Vasquez*, the Circuit Court rejected allegations of speedy trial violations, noting that the defendant had "affirmatively indicated during much of this period that he was willing to countenance extensive pretrial delays." 918 F.2d 329, 337 (2d Cir.1990). The Circuit Court observed that since the defendant had joined motions made by his codefendant, was cognizant of the delays caused by them, and had delayed making a severance motion for 22 months, he "should not be permitted to demand a retroactive inquiry into the reasonableness of delays ..." because he had made "a clear tactical choice." *Id.* Cruz made similar tactical choices for each exclusion in his case; he cannot now complain of unfair delay.

██ The defendant cites *United States v. Didier*, 542 F.2d 1182, 1189 (2d Cir.1976), for the proposition that the government must obtain from a defendant "an express waiver specifically tailored to address only the time periods actually being waived" in order to exclude Speedy Trial Act time.[2] Cruz Mem. at 8. Cruz asserts that he gave no such explicit waiver as to the government's delayed response to his motion. *Id.* While it may be true that Cruz did not agree to that specific delay, I hold that Cruz's agreements to exclude time until after the main trial and during the preparation of his June, 1995 supplemental motion constitute explicit waivers of Speedy Trial Act requirements for any and all delays during that excluded time.

In addition, defendant's situation is distinguishable from Didier's in two important

ways. First, the *Didier* trial court twice agreed to adjournments *sine die* requested by the government without consulting Didier himself, never informing him of one the exclusions and telling him of the other only after it been granted. *Didier*, 542 F.2d at 1184–85, 1189 n. 10. The Second Circuit condemned that procedure and required that a trial court elicit an explicit waiver from a defendant *before* it excludes time from a speedy trial clock. *Id.* at 1189. The defendant in the case at bar was given all these protections. Every exclusion of time from the speedy trial clock was made in Cruz's presence; the lengthiest delay was explicitly agreed to after a lengthy explanation of the defendant's rights. *See* Discussion of December 8, 1994 hearing, *supra*. Cruz's waivers of the Speedy Trial Act all meet the specifications of *Didier*.

In addition, the defendant in *Didier* suffered delay because the trial judge was engaged in trying other cases, a delay which could not have been foreseen by defendant. *Id.* at 1185. In Cruz's case, by contrast, the most significant delay not due to a pending motion was caused directly by the trial of Angel Padilla, severance from which Cruz had requested and been granted, with significant salutary benefit to him. It was both foreseeable and unavoidable that severance of Cruz from his codefendants would delay Cruz's trial; Cruz cannot claim to have been surprised by the delay, as the defendant in *Didier* might have been. Given the obvious scheduling consequences of a successful severance application, Cruz's motion must be read effectively to assert that the severance of his case from that of his codefendants entitled him not only to severance, but also to a speedy trial before a different judge. I am unwilling to read such a requirement into the Speedy Trial Act without authority to that effect in this Circuit.

Finally, Cruz argues that he was "placed snugly between a rock and a hard place" by the choices available to him: forego his right to a speedy trial or forego the rights he asserted in motion practice. Cruz.Mem. at

---

2. Although the facts in *Didier* pre-date § 3161 and the Circuit Court therefore refers to local speedy trial rules, the Court's logic is still relevant to this analysis.

6–8, citing *United States v. Hastings,* 847 F.2d 920, 923 (1st Cir.1988), *cert. denied,* 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988). The tension Cruz complains of is an inevitable result of the Speedy Trial Act, which assures defendants a speedy trial but explicitly excludes time when a motion is pending before the Court. In *Hastings,* the government's "willful, dilatory" refusal to provide automatic discovery forced the defendant to stop his speedy trial clock repeatedly with discovery motions. *Hastings,* 847 F.2d at 928. Although Cruz alleges that the government's behavior in this case was "equivalent to a deliberate attempt to delay his trial," Cruz Mem. at 6, the Court rejects this characterization completely. The government's behavior in this case was neither negligent nor improper; it did not answer Cruz's October, 1994 motion because it did not need to, since time was excluded in the case pending completion of the main trial and then pending the filing of his supplemental motions. It is true that the overall delay was lengthy, but it was agreed to by Cruz, and the time was excluded in his presence, and, for the most part, for his benefit. Cruz was not forced into any "Catch–22" beyond that inherent within the Speedy Trial Act itself.

### 2. The Constitutional Claim

Cruz also alleges a violation of his constitutional right to a speedy trial under the Fifth and Sixth Amendments to the United States Constitution. The United States Supreme Court heard such a challenge in *Barker v. Wingo,* and identified four factors that must be considered in determining whether the constitutional right to a speedy trial has been violated: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). *See Doggett v. United States,* 505 U.S. 647, 650, 112 S.Ct. 2686, 2690, 120 L.Ed.2d 520 (1992); *United States v. Vassell,* 970 F.2d 1162, 1164 (2d Cir.1992), *cert. denied sub nom Moore v. United States,* —— U.S. ——, 113 S.Ct. 627, 121 L.Ed.2d 559 (1992); *Vasquez,* 918 F.2d at 338.

■ Each of these factors weighs against Cruz's claims. First, the 14–month delay of Cruz's trial is significantly shorter than many delays that have been upheld as constitutional. *See Vasquez,* 918 F.2d at 338 (allowing 26–month delay); *Flowers v. Warden, Connecticut Correctional Institution,* 853 F.2d 131, 133 (2d Cir.1988), *cert. denied,* 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988), *reh'g denied,* 488 U.S. 1051, 109 S.Ct. 887, 102 L.Ed.2d 1009 (1989) (allowing 17–month delay and listing 11 cases allowing delays longer than 14 months).

■ Second, the reason for delay in this case is attributable to valid motions and exclusions, many prompted by the defendant himself. Defendant's codefendants made motions in autumn, 1994; defendant requested severance from the main trial and agreed to be tried after it; defendant twice asked for the opportunity to make supplemental motions after the main trial, and defendant asked for additional time in autumn, 1995 so that his new counsel could acquaint himself with the case. All of these delays were justified and appropriate, and the Court was willing to exclude time to satisfy the defendant's needs. The only delay prompted by the government was equally valid, raising a colorable and eventually successful challenge to the propriety of Cruz's counsel, Manuel Zapata, remaining in the case. In sum, the reasons for delay all weigh against any finding of a constitutional violation.

■ Third, it must be noted that defendant waited until literally the eve of trial to assert his speedy trial rights. The Supreme Court has instructed that, since a serious deprivation is more likely to prompt a defendant to complain, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193; *Vasquez,* 918 F.2d at 338 (lengthy delay in asserting speedy trial rights "weighs heavily" against defendants). Cruz raised no speedy trial concerns until the day before *voir dire* was to begin at his trial. By the Supreme Court's instruction, his silence is deemed to indicate that the delay of his trial was not serious enough to constitute a constitutional wrong.

■ The final factor identified by the Supreme Court in *Barker* is prejudice to the

**94**

defendant, which the Court described as involving three interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. Here, there is no claim that Cruz's defense was prejudiced by the death or unavailability of any witnesses, and his 14 months in prison cannot constitute oppressive pretrial incarceration given precedent in this circuit. *See Vasquez* at 338 (holding 26 months pretrial incarceration acceptable); *Flowers* at 133 (holding 17 months pretrial incarceration acceptable). Cruz alleges that he was prejudiced by his former attorney's admissions concerning that attorney's representation of a former codefendant. This single allegation of prejudice is entirely insufficient to prove a violation of the constitutional right to a speedy trial. *See Flowers* at 133–34 (summarizing prejudice faced by other defendants).

In conclusion, defendant Cruz failed to demonstrate a violation of his statutory or constitutional right to a speedy trial. His motion to dismiss the indictment was therefore denied.