**UNITED STATES of America**

v.

**Giuseppe GAMBINO, et al., Defendants.**

**No. 7S 88 Cr. 919 (PKL).**

United States District Court,
S.D. New York.

Feb. 18, 1992.

130

Mitchell A. Golub, New York City, for Joseph LaRosa.

Martin G. Fogelson, New York City, for Emanuele Adamita.

Ira J. Friedman, Brooklyn, N.Y., for Francesco Inzerillo.

John M. Apicella, Brooklyn, N.Y., for Lorenzo Mannino.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Andrew C. McCarthy, Frances M. Fragos, of counsel), for U.S.

## ORDER AND OPINION

LEISURE, District Judge:

On January 3, 1990, a Grand Jury filed the seventh superseding indictment (the "indictment") against the defendants in this case. The evidence presented to the Grand Jury was the result of a long-term investigation by the Government into various activities of an international organization known as "the Mafia" or "La Cosa Nostra." According to the Government, this organization, or systems of organizations, is responsible for the importation and distribution of large quantities of narcotics in violation of federal law. To supplement its income from the narcotics trade, the organization also allegedly participates in gambling, loan sharking, and extortion. The Government charges that murder and other acts of violence are carried out by members of the organization to facilitate its operations.

Four defendants charged in the indictment—Joseph LaRosa ("LaRosa"), Emanuele Adamita ("Adamita"), Francesco Inzerillo ("Inzerillo"), and Lorenzo Mannino ("Mannino") (collectively, the "moving defendants")—have moved this Court pursuant to Fed.R.Crim.P. 14 for severance, and/or for an immediate trial. In support of their motions, the defendants argue that they will suffer "prejudicial spillover" if they are tried along with the remaining defendants and that the delay in their trial, pending a Supreme Court decision on a Double Jeopardy Clause issue originally raised by one of their codefendants, is unreasonable and inconsistent with the provisions of the Speedy Trial Act. For the reasons stated below, the defendants' motions are denied in their entirety.

## Background

The indictment in this case contains seven counts. Count One charges the defendants with conspiracy to import heroin and cocaine into the United States in violation of 21 U.S.C. § 963. Count Two charges the defendants with conspiracy to distribute heroin and cocaine in violation of 21 U.S.C. § 846. Count Three charges defendant Giuseppe Gambino with a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(a) and (b). Count Four charges defendant Rosario Naimo with a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(a) and (b). Count Five charges that defendants Giuseppe Gambino, Giovanni Gambino, Rosario Naimo, Salvatore LoBuglio, and Salvatore D'Amico distributed and possessed with intent to distribute heroin on March 15, 1988, in violation of 21 U.S.C. §§ 802, 812, 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. § 2. Count Six charges defendants Giuseppe Gambino and Mannino with obstruction of justice in violation of 18 U.S.C. §§ 1512 and 2. Count Seven charges all defendants with participation in a criminal enterprise in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 and 1962.

Previously, after the sixth superseding indictment in this case was returned by the Grand Jury,[1] the defendants in this case brought a number of motions, which the Court decided in an Order and Opinion issued on January 25, 1990. *United States v. Gambino*, 729 F.Supp. 954 (S.D.N.Y. 1990). Nine defendants moved for severance from the main trial, and therefore for individual prosecutions, pursuant to Fed. R.Crim.P. 14.[2] The Court declined to order separate trials for each of the defendants then before the Court; rather, the Court divided the defendants into two groups for purposes of trial. *United States v. Gambino*, 729 F.Supp. at 969–71. "Group A" consisted of defendants Giuseppe Gambino and Matteo Romano, as well as Mannino, Inzerillo, and Adamita. "Group B" consisted of defendants LaRosa,[3] Salvatore LoBuglio, Giuseppe D'Amico, Salvatore D'Amico, Francesco Cipriano, Salvatore Candela, and Carmelo Guarnera. In making the division, "[a] major concern of the Court was to divide the defendants into groups which would minimize the quantity of evidence not pertaining to a particular defendant which that defendant would have to sit through." *Id.* at 971. The Court therefore "grouped defendants depending on the extent of overlapping evidence based on the face of the indictment, especially the overt acts," with Group A "consist[ing] of individuals alleged to be leaders of the conspiracy and active from its start in the mid–1970s," and Group B consisting of what the Government referred to as " 'secondary wholesale distributors' or those who 'oversaw and facilitated the transportation, smuggling and storage of multiple kilogram quantities of narcotics.' " *Id.*

On May 7, 1990, the trial of the Group B defendants began. On July 24, 1990, the jury returned a verdict finding Salvatore LoBuglio and Salvatore D'Amico guilty on Counts One, Two, and Five. The other Group B defendants who were tried were acquitted on all charges. The Second Circuit recently affirmed the convictions of LoBuglio and D'Amico. *United States v. Gambino*, 951 F.2d 498 (2d Cir.1991). The trial of the Group A defendants is now tentatively scheduled to begin in the fall of 1992.[4]

---

1. The Grand Jury filed the sixth superseding indictment on December 14, 1989.

2. These defendants included the four defendants who have brought the instant severance motions—LaRosa, Adamita, Inzerillo, and Mannino—as well as defendants Salvatore LoBuglio, Giuseppe D'Amico, Francesco Cipriano, Salvatore Candela, and Carmelo Guarnera.

3. After the Court issued its Order and Opinion, the Government moved for reconsideration of the placement of LaRosa in Group B. *See* Letter of Andrew C. McCarthy, Esq., Assistant United States Attorney, dated February 6, 1990. The Court granted the Government's application on February 20, 1990, and moved LaRosa to Group A.

4. Defendant Giovanni Gambino is also now a part of Group A; he was added as a defendant in this case in the seventh superseding indictment, filed on January 3, 1990.

As part of the January 25, 1990 Order and Opinion, the Court also ruled on Double Jeopardy motions brought by defendants Giuseppe Gambino, Matteo Romano, and Emanuele Adamita. The Court denied Gambino's motions to dismiss Counts One, Two and Three of the indictment against him; denied Romano's motions to dismiss Counts One, Two and Seven of the indictment against him; and denied Adamita's motions to dismiss the indictment against him. *United States v. Gambino*, 729 F.Supp. at 957–69. Gambino and Romano appealed the Court's rulings to the Second Circuit, and on December 10, 1990, a panel of the Second Circuit issued a decision relating to the Double Jeopardy claims of Gambino and Romano. *United States v. Gambino*, 920 F.2d 1108 (2d Cir.1990). The Second Circuit noted that on May 29, 1990, the Supreme Court issued its decision in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which, the Second Circuit concluded, "significantly altered the jurisprudential landscape of double jeopardy." *United States v. Gambino*, 920 F.2d at 1112. In light of the Supreme Court's *Grady* decision, the Second Circuit reversed this Court's decision on Gambino's Double Jeopardy claims as to Counts One and Two of the indictment, holding that the prosecution of Gambino on Counts One and Two is barred by the Double Jeopardy Clause, but affirmed the remainder of this Court's Order and Opinion.

On July 9, 1990, Adamita—whose Double Jeopardy claims were also rejected in this Court's January 25, 1990 Order and Opinion, *United States v. Gambino*, 729 F.Supp. at 968–69—renewed his motion to dismiss the indictment pursuant to the Double Jeopardy Clause after the Supreme Court issued its *Grady* decision. On August 22, 1990, this Court issued an Order an Opinion denying Adamita's motion to dismiss the indictment. *United States v. Gambino*, 742 F.Supp. 855 (S.D.N.Y.1990). Adamita appealed the Court's denial of his motion to dismiss the indictment to the Second Circuit; on December 18, 1990, the Second Circuit affirmed this Court's denial of Adamita's motion in an unpublished

opinion. *United States v. Gambino*, 923 F.2d 846 (2d Cir.1990).

Subsequently, both the Government and defendants Gambino and Romano petitioned the Supreme Court for a writ of certiorari with respect to those portions of the Second Circuit's December 10, 1990 decision that had been resolved adversely to each of them. Similarly, Adamita petitioned the Supreme Court for a writ of certiorari with respect to the Second Circuit's decision affirming this Court's denial of his Double Jeopardy motions. On June 10, 1991, the Supreme Court denied Adamita's petition for a writ of certiorari. *See* ── U.S. ──, 111 S.Ct. 2810, 115 L.Ed.2d 982 (1991). On October 7, 1991, the Supreme Court denied Gambino and Romano's petitions for a writ of certiorari. *See* ── U.S. ──, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991). The Government's petition for a writ of certiorari, however, has remained pending. Also on October 7, 1991, the Supreme Court granted the Government's petition for a writ of certiorari from the decision of the Tenth Circuit in *United States v. Felix*, 926 F.2d 1522 (10th Cir.1991), a case raising issues very similar to those considered by the Second Circuit in holding that the prosecution of Gambino on Counts One and Two is barred by the Double Jeopardy Clause. *See* ── U.S. ──, 112 S.Ct. 47, 116 L.Ed.2d 25.

Defendants LaRosa, Adamita, Inzerillo, and Mannino have each now moved this Court for severance and/or for an immediate trial. LaRosa has moved, pursuant to Fed.R.Crim.P. 14, for severance of his trial from those of his codefendants "to avoid prejudicial spillover which would inevitably result from a joint trial." LaRosa also seeks to join in the motions filed by his codefendants, to the extent that they are applicable to him. Affirmation of Mitchell A. Golub, Esq., counsel for LaRosa, dated November 24, 1991 ("Golub Aff."), at 1–2. Adamita has moved, pursuant to Fed. R.Crim.P. 14, for severance of his trial in order to avoid "prejudicial spillover," as well as so-called "prejudicial taint." Adamita Memorandum of Law at 2–4. Inzerillo has moved, pursuant to Fed.R.Crim.P.

14, for severance from the joint trial, and also claims that the delay in the trial of the Group A defendants is "unreasonable" and inconsistent with the Speedy Trial Act. Affidavit of Ira J. Friedman, Esq., counsel for Inzerillo, sworn to on November 27, 1991 ("Friedman Aff."), at 1–4. Mannino has moved "for a severance and for a trial forthwith," claiming that the delay in trial is inconsistent with the Speedy Trial Act. Affidavit of John M. Apicella, Esq., counsel for Mannino, sworn to on November 27, 1991 ("Apicella Aff."), ¶ 3. The Court will address first the defendants' arguments relating to severance and second the defendants' arguments relating to the Speedy Trial Act.

## Discussion

### I. Severance

#### A. *General Considerations*

■ Rule 14 of the Federal Rules of Criminal Procedure provides in part that:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Generally, "defendants who are jointly indicted should be jointly tried." *United States v. Ventura*, 724 F.2d 305, 312 (2d Cir.1983). There is a strong "policy favoring joinder of trials, especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir.1991). The Supreme Court has recognized that "[j]oint trials play a vital role in the criminal justice system," and that "[j]oint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Richardson v. Marsh*, 481 U.S. 200, 209–10, 107 S.Ct. 1702, 1708–09, 95 L.Ed.2d 176 (1987) (Scalia, J.); *see also United States v. Casamento*, 887 F.2d 1141, 1150 (2d Cir.1989) ("by and large, joinder promotes judicial efficiency"), *cert.*

*denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990).

"A trial court has wide discretion in considering a motion to sever pursuant to Fed. R.Crim.P. 14." *United States v. Gallo*, 863 F.2d 185, 194 (2d Cir.1988) (citing *United States v. Sliker*, 751 F.2d 477, 492 (2d Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985)), *cert. denied*, 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989); *see also United States v. Casamento*, 887 F.2d at 1149 ("Motions to sever are committed to the sound discretion of the trial judge.") (citing *United States v. Chang An–Lo*, 851 F.2d 547, 556 (2d Cir.), *cert. denied*, 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988)). It is well-established in the Second Circuit that:

In order to demonstrate an abuse of this discretion, a defendant bears the "extremely difficult burden" of showing that substantial prejudice resulted from the denial of the motion. *United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980). It must further be shown that the prejudice resulted from the joinder, not merely that the defendant "might have had a better chance for acquittal at a separate trial." *United States v. Rucker*, 586 F.2d 899, 902 (2d Cir.1978).

*United States v. Gallo*, 863 F.2d at 194; *see also United States v. Minicone*, 960 F.2d 1099, 1110 (2d Cir.1992) ("[T]o overturn a conviction based on the denial of a severance motion, the defendant must show that he was so severely prejudiced that, in effect, he was denied a fair trial— not only that his chances would have been improved at a separate trial.") (citing *United States v. Scarpa*, 913 F.2d 993, 1015 (2d Cir.1990)).

In *United States v. Casamento, supra*, although the Second Circuit expressed some "misgivings" about lengthy, multidefendant criminal trials, it nonetheless rejected the defendant-appellants' argument "that the length and complexity of [their] trial," which involved 21 defendants and lasted 17 months, "deprive[d] appellants of their right to due process." 887 F.2d at 1151. The Second Circuit noted both the advantages (greater efficiency and de-

creased chance of inconsistent verdicts) and the disadvantages (great burdens placed upon jurors, defendants, counsel and trial judges) provided by lengthy, multidefendant trials, and "recognize[d] that district judges must retain a considerable degree of discretion in determining whether, on balance, the fair administration of justice will be better served by one aggregate trial of all indicted defendants or by two or more trials of groups of defendants." *Id.; see also United States v. DiNome,* 954 F.2d 839, 842 (2d Cir.1992). The Second Circuit further set out "some benchmarks ... to guide the exercise of that discretion," including:

In those cases where the judge determines that the time for presentation of the prosecution's case will exceed four months, the judge should oblige the prosecutor to present a reasoned basis to support a conclusion that a joint trial of all the defendants is more consistent with the fair administration of justice than some manageable division of the case into separate trials for groups of defendants. In determining whether the prosecutor has made an adequate showing, the judge should weigh the interests of the prosecution, the defendants, the jurors, the court, and the public.

*United States v. Casamento,* 887 F.2d at 1151–52.

In the instant case, which the Government has indicated will likely last at least 9 months, the Government has already advanced significant reasons to keep the Group A defendants together in one trial (as opposed to separate trials for each individual defendant); these reasons were set forth in the Court's Opinion and Order of January 25, 1990, which addressed the original severance motions brought in this case:

First, the government does indeed have an interest in prosecuting the case in a similar fashion as it was presented to the Grand Jury. Co-conspirators should be tried together whenever feasible. Second, the government and the public have an interest in as quick and efficient a

resolution of the charges as possible.... Third, the stress on the witnesses will be lessened by minimizing the total number of trials. Keeping the number of times that certain key witnesses must repeat their testimony will also reduce the relative advantage accruing to defendants who are tried at later dates and who can benefit from knowledge of the contents and weaknesses of a witness's testimony.

*United States v. Gambino,* 729 F.Supp. at 971. These considerations are no less applicable now, and the mere fact that the trial of the Group A defendants will be more lengthy and complex than any separate trial of an individual defendant is insufficient to justify further division of the defendants in this case. Moreover, although LaRosa argues that "a severance eliminates the need for a trial court to resolve difficult, if not impossible dilemmas regarding evidence which may be admissible against some, but not all, defendants, streamlines the issues before the court and the jury, and eliminates time consuming strategic and scheduling conflicts amongst defense counsel," LaRosa Memorandum of Law at 4–5, this argument is specious. While it is undoubtedly true that the trial of any one severed defendant, by itself, will be shorter and less complicated than a joint trial of all Group A defendants, the aggregate costs to the judicial system of four severed trials plus one joint trial of the remaining defendants would far exceed those of a joint trial of all Group A defendants.

## B. *"Prejudicial Spillover"*

■ The main focus of the arguments of the moving defendants is not, however, the mere length and complexity of the upcoming trial of the Group A defendants; rather, the moving defendants argue that they should be severed from the remaining defendants because they will suffer "prejudicial spillover" from evidence that is expected to be introduced at trial relating acts allegedly committed by their codefendants.[5] Claims of "prejudicial spillover" sel-

---

5. Although Mannino has not explicitly made a claim of "prejudicial spillover," he has indicated

that he "adopts by reference the arguments of his co-defendants insofar as they are applicable

dom succeed, *see, e.g., United States v. Vanwort*, 887 F.2d 375, 384 (2d Cir.1989) (" 'A defendant raising a claim of prejudicial spillover bears an extremely heavy burden.' ") (quoting *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir.1988), *cert. denied*, 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989)), *cert. denied*, 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 290 (1990), particularly when the "prejudicial spillover" claim is advanced by a defendant who is charged, along with other defendants, with conspiracy or RICO Act violations. In the instant case, the arguments advanced by the moving defendants in support of their claims of "prejudicial spillover" are without merit.

LaRosa argues that he "had a comparatively small role in what has been alleged to have been a sixteen year conspiracy" and that "[o]nly a tiny fraction of the evidence that will be presented at the trial will either directly or indirectly implicate him." LaRosa Memorandum of Law at 3. LaRosa concludes that severance of his trial "from the main trial would ensure that he would be judged only by the evidence against him, rather than by the greater evidence against others." *Id.* at 8–9. Adamita argues that he "can fairly be characterised as a minor participant in the context of this indictment" and will face "prejudicial spillover" and "prejudicial taint" [6] unless he is tried alone. Adamita Memorandum of Law at 2–4. Inzerillo also argues

that his participation in the conspiracies, as alleged in the indictment, is comparatively minor, and that he will suffer "prejudicial spillover" if he is tried with his codefendants. Friedman Aff., ¶¶ 8–9.

The moving defendants' "prejudicial spillover" arguments fail for at least three reasons. First, even a cursory review of the indictment indicates that the moving defendants can hardly be characterized as minor participants in the conspiracies alleged by the Government. Indeed, the roles that they are alleged to have played are substantially greater than those of the Group B defendants, and it was precisely because of their alleged greater participation that the Court previously determined that the moving defendants should be tried together, along with the Group A Defendants. *See United States v. Gambino*, 729 F.Supp. at 971 ("Group A consists of individuals alleged to be leaders of the conspiracy" and "represents an alleged core of conspirators operating a variety of illegal enterprises out of the Caffe Giardino."). Moreover, the mere fact that the moving defendants may have played comparatively smaller roles in the alleged criminal activities than did the other Group A defendants does not mandate that the moving defendants' severance motions be granted. " ' "[D]iffering levels of culpability and proof are inevitable in any multidefendant trial and, standing alone, are insuf-

---

to him." Mannino Memorandum of Law at 6. The Court will therefore consider any possible claims of "prejudicial spillover" that could apply to Mannino as well as to the other moving defendants.

**6.** In support of his claim of "prejudicial taint," Adamita cites *United States v. Salerno*, 937 F.2d 797 (2d Cir.1991), *cert. granted*, —— U.S. ——, 112 S.Ct. 931, 117 L.Ed.2d 103 (1992). Adamita's reliance on *Salerno* is, however, misplaced. In *Salerno*, "an enormous [case] involving bid-rigging in the New York City concrete industry, with numerous small, tangentially-related counts attached like barnacles," *id.* at 799, the Second Circuit held that the District Court committed reversible error when it excluded, pursuant to Fed.R.Evid. 804(b)(1), exculpatory grand jury testimony of two witnesses who at trial invoked their Fifth Amendment privilege against self-incrimination. *Id.* at 808. The Second Circuit did not merely reverse those convic-

tions that were affected by the erroneous exclusion of evidence; rather, it recognized that "[b]ecause such a huge portion of this case must be reversed on this single evidentiary error, and because the spillover taint undermines the convictions on the lesser counts as well," it reversed the convictions of all appealing defendants. *Id.* The Second Circuit reasoned that the "likelihood of prejudicial taint, from the numerous erroneous verdicts to the remaining few, is simply too great for us to ignore." *Id.* at 809. The problem identified in *Salerno*—"spillover taint running from the erroneously-achieved convictions to the remaining few," *id.* at 799—bears no relevance to the instant case. The *Salerno* Court reversed the convictions not because there were differing degrees of participation among the defendants or because the introduction of evidence as to some defendants prejudiced others, but rather because the convictions on the charges that comprised the major part of the case were improperly obtained.

ficient grounds for separate trials." ' " *United States v. Torres,* 901 F.2d 205, 230 (2d Cir.) (quoting *United States v. Chang An–Lo,* 851 F.2d at 557) (quoting *United States v. Carson,* 702 F.2d 351, 366–67 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983)), *cert. denied,* —— U.S. ——, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990); *see also United States v. Cardascia,* 951 F.2d at 483 ("a disproportionate introduction of evidence relating to joined defendants does not require a severance in every case"). In *Cardascia,* the Second Circuit recognized that:

> The deference given by an appellate court to a trial court's severance decision reflects the policy favoring joinder of trials, especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted. Acknowledged in this policy is the inevitable tolerance of some slight prejudice to codefendants, which is deemed outweighed by the judicial economies resulting from the avoidance of duplicative trials. Further, the risk of inconsistent verdicts resulting from separate trials, and the favorable position that later tried defendants obtain from familiarity with the prosecution's strategy is obviated through multidefendant trials.

*Id.,* at 482–83 (citing *Richardson v. Marsh,* 481 U.S. at 209–10, 107 S.Ct. at 1708–09). In the instant case, the considerations underlying the policy in favor of joint trials substantially outweigh any possible prejudice that the moving defendants may suffer from being tried with the codefendants who, as charged in the indictment, may be relatively more culpable than the moving defendants.

Second, even if the Court were to grant the severance motions and order separate trials, much of the evidence relating to acts allegedly committed by the moving defendants' codefendants would likely be admissible in the separate trials. In *United States v. DiNome, supra,* a case in which the defendants were convicted of, *inter alia,* RICO violations and conspiracy to violate the federal narcotics laws, several defendants appealed to the Second Circuit and claimed that they were prejudiced on account of "spillover." The *DiNome* Court noted that:

> Appellants' "spillover" claim is ... misnamed. The typical spillover claim is that evidence admissible against only one defendant is prejudicial to all defendants and that individual trials should have been held to avoid that prejudice. In the present case, however, the evidence in question is relevant to the RICO charges against all defendants and most probably would have been admitted even if defendants had been accorded individual trials.

*DiNome,* 954 F.2d at 843–44 (citations omitted). More specifically, the Second Circuit reasoned that:

> In the present case, the evidence of numerous crimes, including the routine resort to vicious and deadly force to eliminate human obstacles, was relevant to the charges against each defendant because it tended to prove the existence and nature of the RICO enterprise.... Such evidence was also relevant to prove a pattern of racketeering activity by each defendant.... The evidence of the [RICO enterprise]'s various criminal activities was, therefore, relevant to the RICO charges against each appellant ... because it tended to prove: (i) the existence and nature of the RICO enterprise and (ii) a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities.

*Id.,* at 843 (citations omitted).

In the instant case, Count Seven of the indictment charges all defendants with participation in a criminal enterprise in violation of the RICO statute. The moving defendants cannot be heard to complain that they will be prejudiced by the introduction at trial of evidence relating to racketeering acts allegedly committed by their codefendants; such evidence would likely be admissible in individual trials in order to prove the existence and nature of a RICO enterprise and a pattern of racketeering activity on the part of each defendant, by providing the requisite relationship and continuity of illegal activities.

Similar considerations apply to evidence relating to acts allegedly committed by the moving defendants' codefendants as part of the conspiracies charged in the indictment. Count One charges the defendants, including all four moving defendants, with conspiracy to import cocaine and heroin into the United States. Count Two charges the defendants, including all four moving defendants, with conspiracy to distribute cocaine and heroin. Although the moving defendants argue that they will suffer "prejudicial spillover" from the introduction of evidence of acts allegedly committed by the other Group A defendants, such evidence would likely be admitted in individual trials, because the Government is "entitled to show the entire range of evidence of the conspiracy against each" defendant. *United States v. Nersesian*, 824 F.2d 1294, 1304 (2d Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987); *accord United States v. Scarpa*, 913 F.2d at 1015; *United States v. Biaggi*, 909 F.2d 662, 676 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991); *United States v. Villegas*, 899 F.2d 1324, 1347 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990); *United States v. Cunningham*, 723 F.2d 217, 230 (2d Cir.1983), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984).

Third, even though there may be evidence relating to acts allegedly committed by the moving defendants' codefendants that would not be admissible in a separate trial, the introduction of such evidence in a joint trial will not sufficiently prejudice the moving defendants so as to justify separate trials. " '[T]he fact that evidence may be admissible against one defendant but not another does not necessarily require a severance.' " *United States v. Chang An–Lo*, 851 F.2d at 567 (quoting *United States v. Carson*, 702 F.2d at 367 (citations omitted)). In the instant case, the substantial

reasons supporting trial of the Group A defendants together (as opposed to separate trials for each defendant), *see United States v. Gambino*, 729 F.Supp. at 970–71, as well as the general policy reasons favoring joint trials, especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted, *see, United States v. Cardascia*, 951 F.2d at 482–83, outweigh any possible prejudice that the moving defendants may suffer by being tried with their codefendants. *See also United States v. Carpentier*, 689 F.2d 21, 27 (2d Cir.1982) ("A certain amount of prejudice to a defendant is regarded as acceptable given the judicial economies that result from joinder."), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983). The moving defendants' applications for severance pursuant to Fed.R.Crim.P. 14 on the grounds of "prejudicial spillover" are therefore denied.

II. Delay Pending Supreme Court's Double Jeopardy Decision

Inzerillo has moved for "an immediate trial," asserting that the "continued delay" of his trial is "patently unreasonable" and is inconsistent with the provisions of the Speedy Trial Act. Friedman Aff., ¶¶ 1–3. Inzerillo further argues that he "has had his trial date delayed by numerous motions and appeals involving princeably [sic] codefendant Giuseppe Gambino and the government. Indeed, the most recent delay is directly attributable to the government which claims that it's waiting for a decision in an unrelated case, pending in the Supreme Court regarding an evidentiary matter." *Id.*, ¶ 6. Similarly, Mannino's "application for a severance and for a trial forthwith is made in response to the action of the Government in seeking to delay the trial of [Mannino] until the United States Supreme Court has ruled in the unrelated case of *United States v. Felix*." Apicella Aff., ¶ 3.[7] The defendants' Speedy Trial

---

**7.** Although LaRosa does not explicitly mention the Speedy Trial Act, he does assert that "[t]his court·has been faced with continuous delay in scheduling a trial for the [Group A] defendants while double jeopardy issues involving three of those defendants have wound their way through

the appellate process," LaRosa Memorandum of Law at 2, and he states that he "seeks to join in the motions filed contemporaneously herewith and in the future by other defendants, insofar as they are applicable" to him. Golub Aff. at 2. The Court will therefore consider LaRosa to

138

Act arguments are, however, without merit.

The Speedy Trial Act, 18 U.S.C. §§ 3161–74, provides in part that:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). "Although the Speedy Trial Act requires that a defendant be tried within seventy days of the filing of an indictment or of a defendant's first appearance in court, 18 U.S.C. § 3161(c), various exclusions from the seventy-day calculation are permitted." *United States v. Louis*, 814 F.2d 852, 857 (2d Cir.1987). These exclusions include "[a]ny period of delay resulting from other proceedings concerning the defendant, including ... delay resulting from any interlocutory appeal [or] delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(E)–(F).

■ The interlocutory appeal of defendant Giuseppe Gambino's Double Jeopardy Clause claims has not yet been finally decided. Gambino initially moved this Court to dismiss Counts One, Two, and Three of the indictment against him; the Court denied Gambino's motions in its January 25, 1990 Order and Opinion, 729 F.Supp. at 958–63. On appeal, the Second Circuit held, *inter alia*, that the prosecution of Gambino on Counts One and Two is barred by the Double Jeopardy Clause, but the prosecution of Gambino on Count Three is not barred by the Double Jeopardy Clause. 920 F.2d at 1111–14. Both Gambino and the Government petitioned the Supreme Court for a writ of certiorari with respect to those portions of the Second Circuit's decision decided adversely to them; although the Supreme Court has already denied Gambino's petition, —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991), it has not yet ruled on the Government's petition, which has remained pending. It appears that the Supreme Court is holding its decision on the Government's petition until it issues a decision in *United States v. Felix*, 926 F.2d 1522 (10th Cir.), *cert. granted*, —— U.S. ——, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991), a case involving Double Jeopardy Clause issues similar to those raised in the Government's petition in the instant case. Therefore, as to defendant Giuseppe Gambino, the delay pending the Supreme Court's decision on the Government's petition is unquestionably excluded from the Speedy Trial Act's time calculation as a "delay resulting from any interlocutory appeal." 18 U.S.C. § 3161(h)(1)(E).

■ As for the moving defendants who have advanced claims pursuant to the Speedy Trial Act, the delay pending the Supreme Court's decision on the Government's petition with respect to Gambino's Double Jeopardy Clause claims is also excluded from the Speedy Trial Act's time calculation, as "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). Under the Speedy Trial Act, delay attributable to one defendant is charged to all codefendants. *United States v. Piteo*, 726 F.2d 50, 52 (2d Cir. 1983), *cert. denied*, 466 U.S. 905, 104 S.Ct. 1682, 80 L.Ed.2d 156 (1984); *see also United States v. Pena*, 793 F.2d 486, 489 (2d Cir.1986) (same). The purpose of 18 U.S.C. § 3161(h)(7) "is to make sure that [the Speedy Trial Act] does not alter the present rules on severance of codefendants by forcing the Government to prosecute the first defendant separately or to be subject to a speedy trial dismissal motion under" 18 U.S.C. § 3161. *United States v. Pena*, 793 F.2d at 489 (quoting S.Rep. No. 1021, 93d Cong., 2d Sess. 38 (1974)), U.S.Code Cong. & Admin.News 1974, p. 7186. "Congress clearly intended that, where appropriate,

have joined in the motions of the other moving defendants who are seeking an immediate trial.

joint trials of defendants should continue to be available as a means of promoting judicial efficiency by avoiding duplicative proof at successive trials. It thus intended that reasonable speedy trial time be excludable under [18 U.S.C. § 3161(h)(7)] when necessary to enable joint trials to go forward." *Id.*

"As a general rule," the delay caused by a codefendant's motions in a joint trial can "be attributed to all the defendants without analyzing whether the delay was reasonable." *United States v. Cephas*, 937 F.2d 816, 822 (2d Cir.1991) (citing *United States v. Vasquez*, 918 F.2d 329, 334–35 (2d Cir. 1990)), *cert. denied,* — U.S. —, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992). However, "when a defendant [has] made a severance motion that [has been] denied, a court must examine the reasonableness of any delay caused by a codefendant's motion before it can be excluded as against the complaining defendant." *Id.* (citing *United States v. Vasquez*, 918 F.2d at 336–37). The moving defendants who have moved for severance and advanced Speedy Trial Act claims filed their motions on or about November 29, 1991. The Court must therefore ascertain whether the delay running from November 29, 1991 is reasonable so that the delay may be excluded under 18 U.S.C. § 3161(h)(7).

Although there is no certainty as to when Supreme Court will reach a decision as to the Government's petition, it is highly likely that the Supreme Court will issue its decision in *United States v. Felix*—on which it scheduled oral arguments for January 14, 1992—by the end of its current term, in either June or July of this year, and it is therefore also likely that the Supreme Court will reach a decision as to the Government's petition by that time. As of now, the Court anticipates that the trial of the Group A defendants will commence during the fall of this year, and the delay between the time of the filing of the severance motions and the expected commencement of the trial is eminently reasonable.

The Court notes that it is patently incorrect for Inzerillo to argue that the trial of the Group A defendants has been delayed because of "a decision in an unrelated case, pending in the Supreme Court regarding an evidentiary matter." Friedman Aff., ¶ 6. As discussed *supra,* the Court, the Government, and Gambino are waiting for the Supreme Court to reach a decision as to the Government's petition for a writ of certiorari from the Second Circuit's ruling that the prosecution of Gambino on Counts One and Two of the indictment is barred by the Double Jeopardy Clause; it is not "a decision in an unrelated case" for which the parties are waiting. Furthermore, neither the Government's petition to the Supreme Court in the instant case nor the *Felix* case, which raises similar Double Jeopardy Clause issues, can fairly be described as cases "regarding an evidentiary matter." It is similarly inaccurate for Mannino to argue that the Government is "seeking to delay the trial of [Mannino] until the United States Supreme Court has ruled in the unrelated case of *United States v. Felix,*" Apicella Aff., ¶ 3, or that "the Supreme Court has denied the Government's petition for *certiorari* on the double jeopardy issue in the instant case which this court has already ruled on!," Mannino Memorandum of Law at 3. As discussed *supra,* although it appears that the Supreme Court is waiting until it decides *United States v. Felix* before deciding on the Government's certiorari petition in the instant case, it is still an interlocutory appeal in *this* case—the appeal that Giuseppe Gambino initially brought to the Second Circuit—for which the parties in this case are waiting before the commencement of trial.

■ Beyond the Speedy Trial Act time exclusions attributable to "delay resulting from any pretrial motion," 18 U.S.C. § 3161(h)(1)(F), "delay resulting from any interlocutory appeal," 18 U.S.C. § 3161(h)(1)(E), and "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted," 18 U.S.C. § 3161(h)(7), there is an additional Speedy Trial Act time exclusion that applies to the instant case. The Speedy Trial Act, 18 U.S.C. § 3161(h), provides for a time exclusion for:

(8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

(B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

.　　.　　.　　.　　.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

These provisions "do not permit unlimited delays, and the trial court has the responsibility to ensure that the length of an excludable continuance is reasonably related to the needs of the case." *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1197 (2d Cir.) (citing *United States v. LoFranco*, 818 F.2d 276, 277 (2d Cir.1987)), *cert. denied*, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989). In the instant case, however, given the large number of defendants and counts charged in the indictment; the substantial proof expected to be offered at trial; the extensive pretrial motion practice in which various defendants have engaged; the effects of the Supreme Court's 1990 *Grady v. Corbin*

decision on Double Jeopardy Clause jurisprudence in general and in this case in particular; and the Supreme Court's pending decision on the Government's certiorari petition from the Second Circuit's decision on Giuseppe Gambino's Double Jeopardy claims, the "ends of justice" will best be served by waiting until the Supreme Court finally disposes of the Government's certiorari petition before commencing the joint trial of the Group A defendants. *Cf. United States v. DiTommaso*, 817 F.2d 201, 210 (2d Cir.1987) ("multidefendant, international drug smuggling and money-laundering case was sufficiently complex to warrant excludable time" under 18 U.S.C. § 3161(h)(8)(B)(ii)). In the instant case, the alternative to granting a continuance would be two or more lengthy, complex trials of various Group A defendants, with a greater possibility of inconsistent verdicts and all of the unwelcome burdens on the judicial system of multiple separate trials, as opposed to one (albeit lengthy and complex) proceeding in which all of the charges contained in the indictment can be adjudicated. The moving defendants have therefore failed to establish that their rights under the Speedy Trial Act entitle them to an immediate trial.

█ Lastly, the Court notes that neither Inzerillo nor Mannino has alleged entitlement to an immediate trial under the Speedy Trial Clause of the Sixth Amendment, but even if they had made such a claim, that claim would fail. The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." "The principal purpose of the speedy trial clause is to protect the accused from unnecessary delay on the part of the government in bringing the accused to trial." *United States v. Diacolios*, 837 F.2d 79, 82 (2d Cir.1988) (citations omitted). There are four factors that "must be considered in determining whether a defendant's sixth amendment right to a speedy trial has been violated: (i) the length of the delay, (ii) the reason for the delay, (iii) whether and how the defendant has asserted his speedy trial rights, (iv) resultant prejudice, if any." *Garcia Montalvo v. United States*, 862

F.2d 425, 426 (2d Cir.1988) (per curiam) (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972)). "No one of these factors, however, is 'either a necessary or sufficient condition to the finding of a deprivation of a right,' and courts still must engage in a sensitive balancing process whereby the conduct of *both* the prosecution and the defendant are weighed." *Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir.1988) (emphasis in original) (quoting *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192), *cert. denied*, 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989).

An analysis of the *Barker v. Wingo* factors indicates that the delay between indictment and the expected date of trial of the Group A defendants easily passes muster under the Sixth Amendment. First, the time between the filing of the original indictment in this case, in which both Inzerillo and Mannino were charged—December 14, 1988—and the expected date of trial, although lengthy, is not itself beyond the bounds of propriety under the Sixth Amendment. *Cf. United States v. Vasquez*, 918 F.2d at 338 ("delay of 24 months is 'considerably shorter than that of other cases in which no Sixth Amendment violation has been found'") (quoting *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir.1980)).

Second, the reasons for the delay include the complexity of this multidefendant case, in which a conspiracy lasting approximately 15 years is charged; the extensive pretrial motion practice before this Court, the Second Circuit, and the Supreme Court, in which many of the defendants (including the moving defendants) have engaged; and the substantial uncertainty with respect to the prosecution of Counts One and Two against Giuseppe Gambino caused by the Supreme Court's 1990 *Grady v. Corbin* decision. These reasons all justify the delays encountered in this trial, and the Court is satisfied that the Government has been absolutely diligent in its prosecution of the case.

Third, the moving defendants did not advance their Speedy Trial claims until November 29, 1991—nearly three years after the original indictment was filed, which

would "hardly render[ ] plausible their contention that an expeditious resolution of their cases was a matter of pressing constitutional importance for them." *United States v. Vasquez*, 918 F.2d at 338.

Fourth, the prejudice resulting to the moving defendants is slight. Inzerillo has remained free on bail while the charges contained in the indictment are pending. Although Mannino is currently incarcerated, and "incarceration in the pretrial period [is] a hardship and must be included in the assessment of 'prejudice,'" *id.*, Mannino was only comparatively recently remanded into custody after the Court revoked his release conditions and his incarceration does not "approach the prejudice suffered by defendants in cases where [the Second Circuit has] found a speedy-trial violation." *Id.* (quoting *Flowers v. Warden*, 853 F.2d 131, 133 (2d Cir.), *cert. denied*, 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988)). Therefore, even if Inzerillo and Mannino had advanced a Speedy Trial claim under the Sixth Amendment, such a claim would fail.

### Conclusion

For the reasons stated above, the moving defendants' motions for severance of their trials pursuant to Fed.R.Crim.P. 14 and for immediate trial are denied in their entirety.

SO ORDERED.